UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KARI WARREN, individually and on behalf of all
others similarly situated,

                            Plaintiff,              **OPINION & ORDER**

   - against -                        No. 22-CV-6907 (CS)

THE COCA-COLA COMPANY,

                            Defendant.
------------------------------------------------------------x

Appearances:

Spencer Sheehan
Sheehan & Associates, P.C.
Great Neck, New York

James Chung
Law Office of James Chung
Bayside, New York
*Counsel for Plaintiff*

Steven A. Zalesin
Jane Metcalf
Michael Sochynsky
Patterson Belknap Webb & Tyler LLP
New York, New York
*Counsel for Defendant*

Seibel, J.

       Before the Court is Defendant's motion for judgment on the pleadings.  (ECF No. 15.)

For the following reasons, Defendant's motion is GRANTED.

## I.    **BACKGROUND**

###     A.    **Facts**

       For purposes of this motion, the Court accepts as true the facts, but not the conclusions,

alleged by Plaintiff in her Complaint.  (*See* ECF No. 1 ("Compl.").)

The Coca Cola Company ("Defendant" or "Coca-Cola") manufactures, distributes, markets, labels and sells "Margarita Hard Seltzer" under its Topo Chico brand (the "Product"). (*Id.* ¶ 1.)  Plaintiff purchased the Product at various locations, including a ShopRite supermarket in Pearl River, New York, between May and June 2022.  (*Id.* ¶ 56.)  The Product is sold in 12-packs, which retail for $17.99, or approximately $1.50 per 12-ounce can.  (*Id.* ¶ 36.)  At the top of the Product's front label, there is a photograph of the four types of Margarita Hard Seltzer contained in the 12-pack:  "Strawberry Hibiscus," "Signature Margarita," "Tropical Pineapple," and "Prickly Pear."  (*Id.* ¶¶ 1, 3.)  Beneath that photograph, the front label contains the brand name "Topo Chico," the word "Margarita," and the phrase "Hard Seltzer."  (*Id.* ¶ 2.)  These words appear on a yellow background containing faint images of agave plants.  (*Id.*)  The label further indicates that the Product is 4.5% alcohol by volume.  (*Id.*)  A picture of the front label included in Plaintiff's Complaint is reproduced below.



(*Id.* ¶ 1.)

Relying on the Product's front label, as well as the Merriam-Webster Dictionary, Wikipedia, and International Bartenders Association definitions of "Margarita," (*id.* ¶¶ 6-9), Plaintiff alleges that "[c]onsumers expect to receive a cocktail containing tequila when they

order a margarita as this ingredient defines what a margarita is," (*id.* ¶ 5), and therefore "[c]onsumers will expect the Product to contain tequila," (*id.* ¶ 9).  Plaintiff also contends that term "Hard Seltzer" on the Product's front label reinforces the expectation that the Product will contain tequila, (*id.* ¶ 10), as "the term 'hard' in the context of alcohol refers to distilled spirits, *i.e.*, 'hard liquor'" like tequila, (*id.* ¶ 11; *see id.* ¶ 17 ("[C]onsumers understand 'hard' in the context of alcoholic beverages to refer to distilled spirits.")).  Because the Product contains no tequila – or distilled spirits of any kind – and is instead made using fermented sugar alcohol, Plaintiff contends that the Product's front label deceived her and other consumers into believing that the Product contained tequila.  (*Id.* ¶¶ 9, 19, 30.)

Plaintiff also maintains that the Product's front label is misleading because the Product does not contain sparkling mineral water sourced in Monterrey, Mexico, which Plaintiff claims "is an essential part of Topo Chico beverages."  (*Id.* ¶ 31.)  Put another way, because Plaintiff associates the Topo Chico brand with sparkling mineral water from that location, (*id.* ¶¶ 50-52), she was deceived into expecting the Product to contain that mineral water, (*id.* ¶ 57).  Plaintiff claims that had she known that the Product contained neither tequila nor sparkling mineral water sourced in Mexico, she would not have purchased it, (*see id.* ¶¶ 30-31, 35), and that it was worth less than what she paid, (*id.* ¶ 33).

   B.   **Procedural History**

Plaintiff filed her Complaint on August 14, 2022, asserting claims for:  (1) violations of Sections 349 and 350 of the New York General Business Law ("GBL"); (2) violations of "State Consumer Fraud Acts;" (3) breaches of express warranty and the implied warranty of merchantability and violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*; (4) common law fraud; and (5) unjust enrichment.  (Compl. ¶¶ 70-101.)  Plaintiff

also wishes to represent a class of all persons residing in New York who purchased the Product

during the relevant time period, as well as a separate multi-state class of similar purchasers from

Montana, New Mexico, Idaho, South Carolina, Utah, Mississippi, and Alaska, (*id.* ¶¶ 63-69), and

seeks both monetary damages and costs and expenses, including attorney's fees, (*id.* at 13-14).

Defendant timely answered on August 26, 2022.  (*See* ECF No. 6.)  That same day, the

Court granted Defendant's request for a pre-motion conference concerning a proposed motion

for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (*See* ECF No.

10.)[1]  At the conference on September 20, 2022, the Court offered Plaintiff the opportunity to

amend her Complaint, but her counsel declined, and acknowledged his understanding that the

Court was unlikely to allow amendment later.  (*See* Minute Entry dated Sept. 20, 2022.)  The

instant motion followed.  (*See* ECF No. 15.)

## II.   <u>LEGAL STANDARD</u>

"The standard of review on a motion for judgment on the pleadings pursuant to Federal

Rule of Civil Procedure 12(c) is the same standard of review applied to a motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Cruz v. AAA Carting & Rubbish*

*Removal, Inc.*, 116 F. Supp. 3d 232, 241 (S.D.N.Y. 2015).[2]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

---

[1] In its pre-motion letter, Defendant explained that it elected to answer the Complaint and move under Rule 12(c), instead of moving under Rule 12(b)(6) without answering, in order to prevent Plaintiff's counsel from voluntarily dismissing the case and refiling it in another jurisdiction, as Plaintiff's counsel has done in the past.  (*See* ECF No. 7 at 1.)

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). "A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by

reference, are integral to the complaint." *Id.* "A document is integral to the complaint where the complaint relies heavily upon its terms and effect," and "[m]erely mentioning a document in the complaint will not satisfy this standard." *170 Mercer LLC v. Rialto Cap. Advisors, LLC*, No. 20-CV-2496, 2021 WL 1163649, at *2 (S.D.N.Y. Mar. 25, 2021). "Even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.*

Here, along with its motion, Defendant filed a Request for Judicial Notice, (*see* ECF No. 17), which attached pictures of the individual labels that appear on the cans of each of the four varieties of the Product, as well as a picture of the entire 12-pack packaging, including the Product's Nutrition Facts panel, (*see id.*). In her Complaint, Plaintiff only included images of the 12-pack's front label and the ingredient list excerpted from the Nutrition Facts panel. (*See* Compl. ¶¶ 1, 19.) The entire 12-pack packaging, including the complete Nutrition Facts panel, is "incorporated by reference" because it is "referenced in and relied on in the [C]omplaint," in the context of Plaintiff's allegations "that the product labels . . . are misleading." *Eshelby v. L'Oréal USA, Inc.*, No. 22-CV-1396, 2023 WL 2647958, at *3 n.4 (S.D.N.Y. Mar. 27, 2023); *see Randolph v. Mondelēz Glob. LLC*, No. 21-CV-10858, 2022 WL 953301, at *1 n.1 (S.D.N.Y. Mar. 30, 2022) ("[T]he full labels, provided via a defendant's declaration, are cognizable on a motion to dismiss claims under GBL §§ 349 & 350, because the full packaging is integral to the complaint and incorporated by reference."). I will therefore consider the entire 12-pack packaging, and may do so without converting Defendant's motion into a motion for summary judgment. *See Islam v. Fisher*, No. 07-CV-3225, 2008 WL 650380, at *2 (S.D.N.Y. Mar. 6, 2008) ("The Court may consider documents . . . incorporated by reference into the complaint without converting the motion into a motion for summary judgment."). The labels on the

individual cans contained within the 12-pack, however, are on a different footing.  It is not clear

that a prospective purchaser could even see the individual cans, and those labels are not the basis

of Plaintiff's claims or otherwise appropriate for consideration on this motion.  Accordingly, I do

not consider them.

### III.     DISCUSSION

#### A.     New York General Business Law Claims

Plaintiff's first cause of action arises under Sections 349 and 350 of the GBL.  The

former prohibits "[d]eceptive acts or practices in the conduct of any business, trade or

commerce," and the latter prohibits "[f]alse advertising in the conduct of any business, trade or

commerce."  N.Y. Gen. Bus. Law §§ 349, 350.  To state a claim under either section, a plaintiff

must plausibly allege "first, that the challenged act or practice was consumer-oriented; second,

that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of

the deceptive act."  *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *6

(S.D.N.Y. Oct. 26, 2016); *see Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

Defendant contends that Plaintiff has not plausibly alleged a material misstatement.

"New York courts apply an objective standard in determining whether acts or practices are

materially deceptive or misleading:  whether the alleged act is likely to mislead a reasonable

consumer acting reasonably under the circumstances."  *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d

137, 149 (S.D.N.Y. 2022).  "To survive a motion to dismiss, a plaintiff must do more than

plausibly allege that a label might conceivably be misunderstood by some few consumers."  *Id.*

Instead, "a plaintiff must plausibly allege that a significant portion of the general consuming

public or of targeted customers, acting reasonably in the circumstances, could be misled."  *Id.*

"Although the question of whether a business practice or advertisement is misleading to a

reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021).

Plaintiff's claims hinge on allegations that the Product's labeling is materially misleading because:  (1) the word "Margarita" on the Product's label erroneously signals to consumers that they are purchasing a cocktail containing tequila; (2) the word "Hard" in "Hard Seltzer" and pictures of agave plants on the Product's front label reinforce a consumer's belief that the Product contains tequila; and (3) the brand Topo Chico leads reasonable consumers to expect that the Product contains sparkling mineral water from Monterrey, Mexico, which it does not. (*See* ECF No. 18 ("P's Opp.") at 3-9.)  I find that Plaintiff has failed to plausibly allege that a reasonable consumer would in fact conclude that the representations on the Product's label imply that it contains either tequila or sparkling mineral water, such that the label would be misleading.

### 1.    Tequila Claim

Plaintiff maintains that her purchase of the Product was akin to "order[ing] a margarita," *i.e.*, that she believed the Product was "a cocktail containing tequila," based on the label's use of the term "margarita."  (Compl. ¶ 5.)  Plaintiff also contends that the word "hard" on the Product's label "refers to distilled spirits, *i.e.*, 'hard liquor,'" reinforcing her belief that the Product contained tequila.  (*Id.* ¶ 11.)  These arguments reflect a strained reading that is inconsistent with the Product's labeling and with common sense.

The Product's label does not use the word "Margarita" in a vacuum, and instead states that the Product is a "Margarita Hard Seltzer."  (*Id.* ¶ 2.)  The context provided by the term "Hard Seltzer" is critical and fatal to Plaintiff's claim.  *See Seljak v. Pervine Foods, LLC*, No. 21-CV-9561, 2023 WL 2354976, at *13 (S.D.N.Y. Mar. 3, 2023) ("The allegedly deceptive act

must be looked upon in light of the totality of the information made available to the plaintiff"
and "the context of the packaging as a whole must be considered in evaluating whether deception
has occurred.").  Hard seltzer is a category of "alcoholic beverages that contain carbonated
water, alcohol, and – in most cases fruit flavors, that have enjoyed skyrocketing popularity in the
United States," *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 287
(5th Cir. 2020), which reasonable consumers would recognize as a product distinct from
cocktails like margaritas.  Plaintiff attempts to strip the term "hard" of its context, contending
that it predominantly refers to distilled spirits.  (Compl. ¶ 11; *see* P's Opp. at 7-8.)  That might be
so when used in the phrase "hard liquor," but it is manifestly not so in the phrases "hard cider" or
"hard lemonade," and a reasonable consumer would understand the same in the phrase "hard
seltzer."  "In determining whether a reasonable consumer would have been misled by a particular
advertisement, context is crucial."  *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018).
A reasonable consumer buying a product called "Hard Seltzer" would understand that the word
"hard" on the Product's label simply means that the Product – unlike regular seltzer – contains
alcohol.  *See Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 519 F. Supp. 3d 839, 847 n.6
(D. Or. 2021) (explaining that "the adjective 'hard' means that the drink contains alcohol and is
an 'adult beverage'" in reference to "hard seltzer"); *Hard*, Merriam-Webster Dictionary,
https://www.merriam-webster.com/dictionary/hard, (last visited Apr. 7, 2023) (one definition of
adjective "hard" is "containing alcohol" and providing the examples "hard
seltzer/lemonade/cider.").

Notably, the Product's labeling as a "Margarita Hard Seltzer" contrasts sharply with the
labels of the BuzzBox and Dulce Vida "[r]eady to drink . . . margarita beverages" identified by

Plaintiff in her Complaint.  (Compl. ¶ 18.)[3]  Those canned beverages are called "Perfect Margarita" and "Sparkling Margarita" with no additional qualifiers, and come in packages that describe the contents as "premium cocktails" and specify that they contain tequila.  (*Id.*)  In contrast, the Product's labeling does not refer to it as a cocktail or state that it contains tequila, nor does it describe the drink solely as any kind of Margarita – perfect, sparkling, or otherwise.  Rather, the Product's label uses "Margarita" as a modifier of the term "hard seltzer," without any reference to cocktails or tequila.[4]

Accordingly, a reasonable consumer viewing the Product's label as a whole would understand that they were purchasing a hard seltzer made to taste like a margarita and not a ready-to-drink margarita cocktail.  *Cf. Werbel v. Pepsico, Inc.*, No. 09-CV-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) ("As an initial matter, the term 'Berries' is not used alone, but always is preceded by the word 'Crunch,' to form the term, 'Crunch Berries'" and "[t]here are no representations that the Crunch Berries are derived from real fruit nor are there

---

[3] Although Plaintiff included images of both the BuzzBox and Dulce Vida packaging in her Complaint, those images lack clarity.  Accordingly, the Court takes judicial notice of publicly available images of the same BuzzBox and Dulce Vida packaging available on their respective websites.  *See Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 545 n.3 (S.D.N.Y. 2022) (taking judicial notice of "clearer images of the . . . packaging that already appear in the body of the Amended Complaint"); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 673 (E.D.N.Y. 2017) (At the motion to dismiss stage, courts may take judicial notice of "materials – such as product labels and packaging – referenced numerous times in the complaint.").

[4] That "Margarita" refers to the taste of the Product and is not a representation that the Product is a margarita is further confirmed by the flavor varieties within the package.  The package contains images of those varieties, which say, "Strawberry Hibiscus," "Signature Margarita," "Tropical Pineapple," and "Prickly Pear," and below each such flavor designation the words "Naturally Flavored with other Natural Flavors" appear.  (Compl. ¶ 1.)  It would be abundantly clear to a reasonable consumer that those varieties – including "Signature Margarita" – do not represent margaritas but instead describe the flavors of the hard seltzer contained in the package.  *See Future Proof Brands, L.L.C.*, 982 F.3d at 287 ("Hard seltzers are alcoholic beverages that contain carbonated water, alcohol, and—in most cases—*fruit flavors* . . . .") (emphasis added).

any depictions of any fruit on the cereal box." Thus, "no reasonable consumer would be deceived into believing that Cap'n Crunch has some nutritional value derived from fruit.").[5]

This conclusion is underscored by the circumstances of Plaintiff's purchase. Had she lived in New York for any length of time, she would know that cocktails containing hard liquor are not and cannot be sold in grocery stores.[6] But even assuming that she moved to New York right before buying the Product, she plainly was familiar with a margarita cocktail, and surely knew that nobody sells a margarita for $1.50. (*See* Compl. ¶ 36.) Further, cursory observation of the other items on sale in the beverage section of the ShopRite supermarket where she purchased the Product would have revealed soft drinks, beer, and hard ciders/lemonades/seltzers, but no hard liquor, cocktails, or wine. *See Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 272 (6th Cir. 2018) ("In sum . . . *context matters*. Both the relevant market and the products' labeling are crucial in evaluating plausibility . . . .") (emphasis in original). Given those circumstances, it is simply not plausible that Plaintiff thought she was buying a product containing tequila. *See*

---

[5] The use of agave plant images on the Product's front label does not change this conclusion. Plaintiff does not dispute that the Product uses an agave-based sweetener. (*See* Compl. ¶ 21; P's Opp. at 7.) Accordingly, the agave plant images are an accurate reflection of the Product's flavoring and not a representation that the Product contains an agave-based spirit such as tequila. *See McKinniss v. Gen. Mills, Inc.*, No. 07-CV-2521, 2007 WL 4762172, at *3-4 (C.D. Cal. Sept. 18, 2007) (dismissing claims that Berry Berry Kix and Fruity Cheerios were misleading names and holding that "an image of a fruit . . . is permitted to indicate that product's 'characterizing flavor' and is not an affirmation that the product contains any fruit at all.").

[6] *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 104 (S.D.N.Y. 2021), discounts this fact, but I respectfully disagree with that conclusion. The primary case on which *Cooper* relied, *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015), involved a more nuanced understanding than the simple observation that liquor is only sold in liquor stores in New York. "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense," *Iqbal*, 556 U.S. at 663-64, and in my view both suggest that adults are aware of where liquor can and cannot be sold. In any event, as set forth in the text, even if Plaintiff were not aware of those facts, the outcome would be the same.

*Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("[T]he Court [must] apply its common sense when determining the plausibility of a claim – common sense dictates that no reasonable consumer could plausibly think [what plaintiff thought] when faced with overwhelming evidence to the contrary."); *cf. Lissa Coppola, LLC v. Higbee*, No. 19-CV-678, 2020 WL 1154749, at *8 (W.D.N.Y. Mar. 10, 2020) ("A reasonable consumer for purposes of a GBL § 349 analysis does not lack common sense and is not assumed to be the least sophisticated consumer.").

At bottom, Plaintiff's alleged belief is based on her "selective interpretation of individual words from [the] [P]roduct's labeling," *Hairston v. S. Beach Beverage Co., Inc.*, No. 12-CV-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012), and is "plainly inconsistent with the face of the package, and with common sense," *Seljak*, 2023 WL 2354976, at *13. But Plaintiff is not "entitled to take a fleeting glimpse at the front of a product label, home in on the one word that confirms h[er] hopes about the product and ignore the other words, and then sue to recover the purchase price when [s]he eventually learns that the product is what the label, read in its entirety, says it is." *Alvarez v. Ashley Furniture Indus., Inc.*, No. 16-CV-630, 2017 WL 4785970, at *6 (C.D. Cal. Sept. 20, 2017); *see Hairston*, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (rejecting consumer protection claim "based on a single out-of-context phrase found in one component of [the product's] label.").[7]

---

[7] Plaintiff's passing references to *Cooper*, 553 F. Supp. 3d 83, and *Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d. 965 (W.D. Mo. 2021), do not alter this conclusion. Both those cases were concerned with a product the label of which identified it solely as a "Sparkling Margarita" and "contain[ed] an image of a margarita served with a salted rim and lime wedge." *Cooper*, 553 F. Supp. 3d at 90; *see Browning*, 539 F. Supp. 3d at 969. Because that label only used the words "Sparkling Margarita" and the "image of a margarita . . . could arguably reinforce a consumer's impression that the beverages inside were actually cocktails," the *Cooper* court determined that the product's labeling might be misleading to a reasonable consumer. *Cooper*,

And even assuming for the sake of argument that the Product's front label created an ambiguity as to whether the Product contained tequila (which it did not), the ingredients panel on the back of the Product's packaging – which has no reference to tequila – can cure that ambiguity.  *See Brown v. Kellogg Sales Co.*, No. 20-CV-7283, 2022 WL 992627, at *6 (S.D.N.Y. Mar. 31, 2022) ("[A] manufacturer may clarify an ambiguous interpretation of a label based on disclaimers and disclosures on the side or back of product packaging" and "the reasonable consumer would overcome any confusion by referring to the unambiguous ingredient list on the packaging.").  Plaintiff argues that the ingredient list on the back of the Product is "not a defense on the pleadings" because reasonable consumers are not expected to look past misleading representations on the front label.  (P's Opp. at 8.)  That may be so where the front label contains an out-and-out deception, but not where it is merely ambiguous,[8] and surely not

---

553 F. Supp. 3d at 96; *see Browning*, 539 F. Supp. 3d at 971 (holding that "the use of the terms 'Margarita,' 'Mojito,' 'Sangria,' and 'Rosé' would likely "mislead a reasonable consumer into believing that the respective Products contain either tequila, rum, or wine" particularly as "the Products' respective packaging contains a combination of misleading images and language, such as 'sparkling classic cocktails' with images of cocktail and wine glasses.").  In contrast, the Product at issue is identified as a "Hard Seltzer" and the label does not use the word "Margarita" in a vacuum or use the word "cocktail," let alone contain an image of a margarita.  Because the Product's label lacks the images or language on which the *Cooper* and *Browning* courts relied in determining that the labels at issue in those cases could be misleading as a whole, those cases are inapposite.

[8] Plaintiff's argument that she should not be expected to check the Product's ingredient list reflects too narrow a reading of the Second Circuit's opinion in *Mantikas*, which held that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." 910 F.3d at 637.  "Since *Mantikas* . . . district courts within the Second Circuit have continued to recognize that clarification can defeat a claim for deceptive packaging if a front label contains an ambiguous representation, whereas *Mantikas* held that clarification cannot correct an *unambiguously* misleading representation."  *Foster v. Whole Foods Mkt. Grp., Inc.*, No. 22-CV-1240, 2023 WL 1766167, at *3 (E.D.N.Y. Feb. 3, 2023) (emphasis in original); *see Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 310-11 (S.D.N.Y. 2022) ("Since *Mantikas*, courts in this Circuit have reasoned that if a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the Court should inquire

where, as here, it is not misleading at all, as this Court has previously explained in another case involving the same Plaintiff's counsel.  *See Beers v. Mars Wrigley Confectionery, U.S., LLC*, No. 21-CV-2, 2022 WL 493555, at *5 (S.D.N.Y. Feb. 17, 2022) (argument that ingredient list cannot correct or clarify ambiguity on product's front label "is simply inapplicable where the Product's front label is not misleading" and "there is no deception to be cured").

In that vein, Plaintiff further argues that because the ingredient list does not specify the type of alcohol the Product contains, her assumption that the Product contained tequila was reasonable.  (*See* P's Opp. at 8 ("a consumer would not have known the alcohol did not come from tequila.").)  The Product's label contains no reference to "tequila" and – as discussed above – the context provided by the Product's front label makes clear that it is a "hard seltzer," not a ready-to-drink cocktail containing tequila.  Accordingly, the ingredient list confirms what the absence of the word "tequila" on the label suggests – that the Product does not contain it. *See Winston v. Hershey Co.*, No. 19-CV-3735, 2020 WL 8025385, at *4 (E.D.N.Y. Oct. 26, 2020) ("[H]ere, there is no . . . misleading word or phrase on the packaging; rather, the ingredient list confirms what the absence of the word 'chocolate' on the packaging suggests – that Reese's White is not white chocolate.").[9]

---

as to whether the allegedly misleading element is instead merely ambiguous.  If so, the clarification can defeat the claim."); *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-CV-2886, 2021 WL 4502439, at *3 (E.D.N.Y. Sept. 30, 2021) ("Where the front of a package makes a bold and blatant misstatement about a key element of a product, there is little chance that clarification or context on the reverse of the package will suffice to overcome a deception claim . . . .  But when the front of the package is better characterized as ambiguous than misleading, courts looking at the alleged misrepresentations in their full context and are more likely to grant a motion to dismiss.").

[9] Plaintiff maintains that "'the fact that a particular ingredient – tequila, say – does not appear on a product's ingredient list does not automatically defeat a deceptive labeling claim as a matter of law.'"  (P's Opp. at 8 (quoting *Cooper*, 553 F. Supp. 3d at 100).)  In so doing, Plaintiff omits key language from the *Cooper* court's opinion, which expressly held that "*[s]tanding*

### 2.  Sparkling Mineral Water Claim

Similarly, Plaintiff's claim that the Product's use of the Topo Chico brand name would lead reasonable consumers to believe that it contains sparkling mineral water sourced from Monterrey, Mexico is not plausible.

Plaintiff does not claim that the Product's label states that it contains sparkling mineral water from Monterrey or from any other source.  (*See generally* Compl.)  Instead her belief that the Product contains such water appears to be based solely on her understanding that "[t]he Topo Chico brand is known for its . . . no-frills approach to sparkling mineral water."  (*Id.* ¶ 52; *see id.* ¶ 57.)  But the Product's label makes no claims that it was manufactured in Mexico or is otherwise connected to Mexico in any way, or that it contains sparkling mineral water of any kind.  (*See* ECF No. 17-5 at 3.)  Accordingly, it is implausible that a reasonable consumer would view the Topo Chico branding on the Product's label and automatically conclude – as Plaintiff apparently did – that the Product contained sparkling water sourced in Monterrey, Mexico.  *See Hardy v. Olé Mexican Foods, Inc.*, No. 21-CV-1261, 2022 WL 2906395, at *3 (W.D.N.Y. July 21, 2022) ("No reasonable consumer would view the representations relied upon by Plaintiff and automatically conclude the [product was] manufactured in Mexico when the representations say nothing about the country of origin . . . .").

---

*alone*, the fact that a particular ingredient – tequila, say – does not appear on a product's ingredient list does not automatically defeat a deceptive labeling claim as a matter of law." *Cooper*, 553 F. Supp. 3d at 100 (emphasis added).  The absence of tequila from the Product's ingredient list does not stand alone here.  Instead, that absence is properly considered in the context of the Product's label as a whole which – as discussed above – makes clear that the Product is a hard seltzer, not a drink containing tequila.  *See, e.g., Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 335 (E.D.N.Y. 2018) (a reasonable consumer would not be misled where "[t]he label taken as a whole" made contested fact clear).

At most, the Topo Chico branding on the Product's front label creates an ambiguity as to what type of water it contains. But any such ambiguity is quickly resolved after reading the information on the Product's back label, which explicitly states that it contains filtered carbonated water that is "not from source" and certain "minerals for taste," and that it is produced and bottled in Milwaukee, Wisconsin. (ECF No. 17-5 at 3.) Thus, when the Product's packaging is "properly analyzed . . . as a whole," it is clear that no reasonable consumer would be misled into believing that it contained sparkling mineral water from Mexico. *Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) (summary order); *see Hardy*, 2022 WL 2906395, at *4 ("At worst, the front-label representations are ambiguous as to where the [product is] made, which is resolved after reading the clear country of manufacture on the back of the package."); *Nelson*, 246 F. Supp. 3d at 674 (unreasonable to assume that product was brewed in Australia when "the images of a kangaroo and a constellation and allusion to the company's historic roots in Australia [on the product's label] are eclipsed by the accurate disclosure statement" that the product was brewed in the United States.).

In sum, because none of the aspects of the Product's label identified by Plaintiff would mislead a reasonable consumer, her claims under §§ 349 and 350 of the GBL are dismissed.

### B.      Plaintiff's Remaining Claims

Plaintiff also advances claims for common law fraud, violation of state consumer fraud laws, breaches of express and implied warranty, violation of the MMWA, and unjust enrichment. These claims are all premised on the assertion that Defendant's labeling is materially misleading. Because I have already determined that Plaintiff has not plausibly alleged that the Product's labeling would be likely to deceive or mislead a reasonable consumer, these causes of action are dismissed for the same reasons. *See Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806

(S.D.N.Y. 2021) (dismissing claims for negligent misrepresentation, fraud, breach of express and implied warranty, and unjust enrichment premised on similar assertions as dismissed GBL claims).

Additionally, these claims fail for the independent reason that they are inadequately pleaded.

### 1.  Fraud

To state a claim for common law fraud a plaintiff must show that:  "(1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance."  *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010).[10]  Fraud claims must be pleaded "'with particularity.'"  *Id.* at 481 (quoting Fed. R. Civ. P. 9(b)).  To do so, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the

---

[10] Plaintiff also attempts to raise claims pursuant to the "State Consumer Fraud Acts" of the states included in her putative multi-state class – namely, Montana, New Mexico, Idaho, South Carolina, Utah, Mississippi, and Alaska.  (*See* Compl. ¶¶ 63, 76-80.)  But because all of Plaintiff's claims under New York law fail as a matter of law, she cannot bring claims for products she did not purchase in different states.  *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 94 (2d Cir. 2018) ("claims of putative class members are too dissimilar to support standing against a particular defendant when that defendant did not actually injure a named plaintiff."); *MacNaughten v. Young Living Essential Oils, LC*, 575 F. Supp. 3d 315, 335 (N.D.N.Y. 2021) ("Because no claims under New York law remain, it does not appear that Plaintiff has Article III standing to pursue her other claims, which arise under the laws of other states, and thus cannot raise them on behalf of yet unnamed class members."); *Seljak*, 2023 WL 2354976, at *16 (because "plaintiffs cannot state a claim for the . . . products they did purchase," they lack standing to "bring claims for . . . [substantially similar] products, which they did not purchase" in other states); *Housey v. Procter & Gamble Co.*, No. 21-CV-2286, 2022 WL 874731, at *3 n.3, *9 (S.D.N.Y. Mar. 24, 2022) (because plaintiff "cannot state a claim for the [product] she actually purchased" she lacks standing to "bring a claim for [substantially similar] products she did not purchase" in other states).

statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). While "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent," *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

Apart from the fact that Plaintiff has not pleaded facts rendering plausible the conclusion that the Defendant made a material false statement or omission, her fraud claim also fails because she pleads no facts giving rise to a strong inference of fraudulent intent. At most, the Complaint contains a lone, conclusory allegation that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations," (Compl. ¶ 100), which is insufficient as a matter of law, *see Dwyer*, 598 F. Supp. 3d at 156 (dismissing fraud claim where "[t]he complaint contains only the conclusory allegation that Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its composition and qualities, which does not suffice."); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021) (dismissing fraud claim where "[t]he complaint only contains the conclusory allegation that Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers."); *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 391 (S.D.N.Y. 2021) (dismissing fraud claim where "Plaintiff's only allegation about Defendant's intent is that Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true.").[11] Accordingly, Plaintiff's fraud claim is dismissed.

---

[11] Plaintiff's counsel here was counsel in all three of the cited cases.

### 2.   Express Warranty, Implied Warranty, and Magnuson-Moss Warranty Act

Plaintiff maintains that Defendant breached an express warranty, the implied warranty of merchantability, and the MMWA.  An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  N.Y. U.C.C. Law § 2-313(1)(a).  "While no formal wording is necessary to create an express warranty, there must be a representation of fact or specific promise about the product, rather than an expression of opinion."  *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020) (citing N.Y. U.C.C. Law § 2-313(2)).

Plaintiff alleges that Defendant "expressly and impliedly warranted to Plaintiff that [the Product] contained tequila and Topo Chico's naturally sparkling mineral water," (Compl. ¶ 81), based on "representations about the Product" including "the terms 'Margarita' and 'Hard Seltzer' and pictures of agave plants" and the Product's Topo Chico branding, (*id.* ¶ 84).  But she points to no specific representation that the Product contained either of those ingredients.  Rather, she relies on inferences she drew – which, as discussed, a reasonable consumer would not draw from the generalized representations on the Product's label.  *See Santiful v. Wegmans Food Mkts., Inc.*, No. 20-CV-2933, 2022 WL 268955, at *6 (S.D.N.Y. Jan. 28, 2022) ("[G]eneralized statements by the defendant do not support an express warranty claim if they are such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely.").  In any event, an inference by definition is the opposite of an express, specific representation of fact.  *See Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 574 (S.D.N.Y. 2017) ("[A]n inference that the . . . products are of better quality than they actually are is too vague and

general to be actionable as an express warranty of anything related to the actual goods."). Accordingly, Plaintiff's express warranty claim fails.[12]

A breach of the implied warranty of merchantability occurs when the product at issue is "unfit for the ordinary purposes for which such goods are used," *Santiful*, 2023 WL 2457801, at *6 – in this case, unfit to drink. Plaintiff's claim for breach of implied warranty of merchantability fails because she did not allege that the Product is not drinkable or otherwise not of merchantable quality. To the extent the Complaint alleges that the Product does not conform to any promise or affirmation of fact made on its label, Plaintiff's implied warranty claim fails for the same reasons as her express warranty claim. *See Barreto*, 518 F. Supp. 3d at 807.

Finally, "since claims under the Magnuson-Moss Act stand or fall with the express and implied warranty claims under state law," Plaintiff's MMWA claim must be dismissed as well. *Cali v. Chrysler Grp. LLC*, No. 10-CV-7606, 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011);

---

[12] Additionally, Plaintiff failed to provide advance notice of her breach of warranty claim to Defendant, as required by New York law. *See Dwyer*, 598 F. Supp. 3d at 155. To satisfy the pre-suit notice requirement, "plaintiffs must provide factual allegations – such as the date and method plaintiffs sent a pre-suit notice – supporting the contention that they notified the defendant of the alleged breach within a reasonable time." *Id.* Plaintiff's complaint vaguely alleges that she "provided or will provide notice to Defendant," that she "provides notice to Defendant that it breached the express and implied warranties associated with the Product," and that "Defendant received notice and should have been aware of these issues due to complaints by third-parties." (Compl. ¶¶ 90-92.) But as Plaintiff's counsel knows, such allegations are too conclusory and unspecific to adequately plead the required notice. *See Dwyer*, 598 F. Supp. 3d at 155 (collecting cases).

In the alternative, Plaintiff argues in her Opposition that breach of warranty notice requirements "'have long been jettisoned in New York' for retail sales." (P's Opp. at 11 (quoting *Gavilanes v. Gerber Products Co.*, No. 20-CV-5558, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021).) "But that appears to be a 'minority' view, and in any event it is limited to products for human consumption *that cause physical injury*. Accordingly, the exception – if it exists at all – would not apply here." *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 86 n.3 (S.D.N.Y. 2020) (emphasis added).

*see Bynum*, 592 F. Supp. 3d at 315 ("Because Plaintiff has not pled a state law claim of express or implied warranty, his MMWA claim fails.").

### 3.   Unjust Enrichment

To state a claim for unjust enrichment under New York law a plaintiff must show that "(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015). "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016).

Courts will routinely dismiss an unjust enrichment claim that "simply duplicates, or replaces, a conventional contract or tort claim." *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013). Here, Plaintiff has failed to explain how her unjust enrichment claim is "not merely duplicative of [the] other causes of action." *Id.* (dismissing unjust enrichment claim because plaintiffs failed to explain how it was not merely duplicative of negligent misrepresentation, fraud, and breach of warranty claims); *see Barreto*, 518 F. Supp. 3d at 808-09 (dismissing plaintiff's unjust enrichment claim because claim was based on plaintiff's consumer deception claims); *Alce v. Wise Foods, Inc.*, No. 17-CV-2402, 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative of GBL §§ 349 and 350 claims); *Reynolds*, 136 F. Supp. 3d at 524-25 (granting motion to dismiss plaintiff's unjust enrichment claim as duplicative of § 349 and fraud claims). Therefore, Plaintiff's unjust enrichment claim is dismissed.

21

### C.    Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In her Opposition, Plaintiff requested that I either deny Defendant's motion or grant her leave to file an Amended Complaint.  (P's Opp. at 14.)  But because "[t]he problem[s] with [Plaintiff's] causes of action [are] substantive," and "better pleading will not cure [them]," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), amendment would be futile, *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019); *see Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 97 (S.D.N.Y. 2021); *Roundtree v. N.Y.C.*, No. 19-CV-2475, 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases).

Moreover, Plaintiff – with the benefit of a pre-motion letter from Defendant, (*see* ECF No. 7) – already had the opportunity to amend, but declined to do so, while acknowledging that the Court was unlikely to allow amendment later.  (*See* Minute Entry dated Sept. 20, 2022.) Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the

presentation of theories seriatim."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiff has not suggested that she is in possession of facts that would cure the deficiencies identified in this ruling. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y. Sept. 30, 2022) (denying leave to amend where plaintiff did not "explain how any amendment would cure the deficiencies identified by the Court").

Accordingly, the Court declines to grant Plaintiff leave to amend.

IV.     **CONCLUSION**

For the foregoing reasons, Defendant's motion for judgment on the pleadings is

GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF

No. 15), and close the case.

**SO ORDERED.**

Dated: April 21, 2023
        White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.